IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

JENNIFER W. ETHRIDGE,      )
                         )
       Plaintiff,        )
                         )
       v.            )     Civil Action No. 1:16cv788-WC
                         )
NANCY A. BERRYHILL,      )
Acting Commissioner of Social Security,[1]  )
                         )
       Defendant.      

**MEMORANDUM OPINION[2]**

## I.    INTRODUCTION

Jennifer W. Ethridge ("Plaintiff") filed an application for disability and disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq.*, on August 5, 2013, alleging disability beginning on April 21, 2010. Plaintiff's application for benefits was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision finding Plaintiff had not been under a disability, as defined in the Social Security Act, from April 21, 2010, through the date of the decision

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill shall be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Various amendments to 20 C.F.R. § 404.1529(c)(3) became effective on March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416) (establishing amendments' effective date). Because the ALJ rendered his decision before March 27, 2017, he used the earlier version of § 404.1529(c)(3). For purposes of this appeal, the court reviews the ALJ's decision under the prior version of the regulation.

on March 31, 2015. Plaintiff appealed to the Appeals Council on May 8, 2015. The Appeals Council denied review on July 25, 2016. Accordingly, the ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[3] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 12); Def.'s Consent to Jurisdiction (Doc. 13). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[4]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?

---

[3] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?
An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a prima facie case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant

---

[5] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[6] ("grids") or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal

---

[6] *See* 20 C.F.R. pt. 404 Subpt. P, app. 2.

4

conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was 42 years old on the date of the hearing before the ALJ, and had completed high school, with some college. Tr. 34-35.   Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since April 21, 2010, the alleged onset date." Tr. 14.   At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "degenerative disc diseases, fibromyalgia, asthma, migraine headaches, obesity and affective disorder[.]" Tr. 14.   At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed" in the Social Security Act.   Tr. 15.   Next, the ALJ articulated Plaintiff's RFC, stating that Plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for six hours in an eight-hour workday; and push and/or pull as much as she can lift and/or carry. She can occasionally climb ramps or stairs; never climb ladders or scaffolds; and occasionally balance, stoop, kneel, crouch, or crawl. The claimant can never be exposed to unprotected heights or moving mechanical parts. The claimant can occasionally be exposed to dust, fumes, gases, and pulmonary irritants and extreme cold. The claimant can perform simple, routine, repetitive tasks.

Tr. 17.   Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff is "unable to perform any past relevant work[.]"   Tr. 21. After consulting with the VE, the ALJ determined that "[c]onsidering the claimant's age, education, work

experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" Tr. 22. Finally, at Step Five, and based upon the testimony of the VE, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from April 21, 2010, through the date of this decision[.]" Tr. 23.

## IV. PLAINTIFF'S CLAIMS

Plaintiff presents two issues for the court to consider in its review of the Commissioner's decision. First, Plaintiff argues "the ALJ erred by according little weight to [Plaintiff's] examining physicians and greater weight to non-examining physicians." Doc. 9 at 1. Second, Plaintiff argues "the ALJ's finding of [Plaintiff's] residual functional capacity (RFC) is not based on substantial evidence." *Id*.

## V. DISCUSSION

### A. Whether the ALJ Erred in Affording Plaintiff's Examining Physicians Little Weight and Greater Weight to the Non-Examining Physicians.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause to discount a treating physician's

opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id.* at 1240–41. The Eleventh Circuit has emphasized that courts "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore*, 405 F.3d at 1212).

Unless a treating source's medical opinion is afforded controlling weight, the Commissioner will consider all of the following factors in deciding the weight we give to any medical opinion.

(1) Examining relationship. Generally, more weight is given to the medical opinion of a source who has examined a claimant than to the medical opinion of a medical source who has not examined the claimant.

(2) Treatment relationship. Generally, more weight is given to medical opinions from a claimant's treating sources, since those sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of a claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If a treating source's medical opinion on the issue(s) of the nature and severity of a claimant's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record, it will be given controlling weight. When a treating source is not given controlling weight, the Commissioner must apply the factors below in assigning a particular weight to the opinion of the treating source.

(i)     Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated a claimant and the more times the claimant has been seen by a treating source, the more weight will be given to the source's medical opinion.

(ii)    Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about a claimant's impairment(s) the more weight will be given to the source's medical opinion.

(3) Supportability. The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight that opinion will be given.

(4) Consistency. Generally, the more consistent a medical opinion is with the record as a whole, the more weight it will be given.

(5) Specialization. The Commissioner generally gives more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.

(6) Other factors. When considering how much weight to give to a medical opinion, the Commissioner will also consider any factors the claimant or others bring to the Commissioner's attention, or of which the Commissioner is aware, which tend to support or contradict the medical opinion.

20 C.F.R. § 404.1527(c).

With regards to the ALJ's consideration of non-examining physicians, then,

[r]egulations require that an ALJ consider the opinions of nonexamining physicians, including state agency [medical] consultants. 20 C.F.R. § 404.1527(f). The weight due to a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence. *See id.* § 404.1527(d)(3)–(4); *see also Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158, 1160 (11th Cir. 2004) (holding that the ALJ did not err in relying on a consulting physician's opinion where it was consistent with the medical evidence and findings of the examining physician). Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ should place on that opinion. 20 C.F.R. § 404.1527(d)(4).

*Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011).[7]

If an ALJ has shown good cause to reject the opinion of a treating or examining physician, the ALJ may then properly rely on the opinion of a non-examining medical source if it is consistent with the objective evidence of record. *See Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 743 (11th Cir. Sept. 30, 2011) (per curiam) (unpublished) ("In sum, because the ALJ articulated good cause for discounting the opinions of Flowers's treating and examining doctors and because the consulting doctor's opinion was consistent with the medical record, including the treating and examining doctors's [sic] own clinical findings, the ALJ did not err in giving more weight to the consulting doctor's opinion."); *Davis v. Astrue,* Civil Action No. 2:08CV631–SRW, 2010 WL 1381004, at *5 (M.D. Ala. Mar. 31, 2010) (holding that "the ALJ properly assigned 'great weight' to the opinion a non-examining physician because that opinion was supported by and consistent with the record as a whole[,] unlike the opinion of plaintiff's treating sources"); *Lewis v. Astrue*, (S.D. Ala. Nov. 20, 2012) ("[W]here the ALJ has discounted the opinion of an examining source properly, the ALJ may rely on the contrary opinions of non-examining sources); *Wainright v. Comm'r of Soc. Sec. Admin.,* No. 06–15638, 2007 WL 708971, at *10 (11th Cir. Mar. 9, 2007) (per curiam) (holding that the ALJ properly assigned substantial weight to non-examining sources when he rejected examining psychologist's opinion, clearly articulated his reasons for doing so, and the decision was supported by substantial evidence); *Osborn v. Barnhart,* 194 F. App'x 654, 667 (11th Cir. Aug. 24, 2006) (per

---

[7] Though 20 C.F.R. § 404.1527 has been amended since *Jarrett* was issued, the amendments have not affected *Jarrett*'s substantive application of that regulation.

curiam) (holding that it was proper for the ALJ to give more weight to the non-examining physician and only minimal weight to the treating physician because the treating physician's opinion was not supported by objective medical evidence); *see also* SSR 96-6P (S.S.A. July 2, 1996) ("[T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant. [ ]In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Here, Plaintiff argues the ALJ committed reversible error by giving little weight to the opinions of Plaintiff's treating physicians, and greater weight to a non-examining, reviewing physician, and a consultative physician. Particularly, Plaintiff challenges the ALJ's rejection of the opinions of her treating physicians—Dr. Richard Bendinger and Dr. David Ghostley—and the significant weight afforded to the state agency non-examining and consultative physicians—Dr. Richard Whitney and Dr. Arnold Mindingall. As best

the undersigned can tell, she raises two specific arguments. First, relying upon *Lamb v. Bowen,* 847 F.2d 698 (11th Cir. 1986), Plaintiff argues that the opinions of non-examining physicians are entitled to little weight when they are contrary to those of the examining physician. Thus, Plaintiff asserts the ALJ erred when affording Dr. Whitney significant weight and Dr. Bendinger little weight because the opinion of Dr. Whitney was contrary to that of Dr. Bendinger. Second, relying upon *Johnson v. Barnhart*, 138 F. App'x 266 (11th Cir. 2005), Plaintiff argues that the ALJ had an affirmative duty to further develop the record after she rejected the opinions of Plaintiff's treating physicians. Thus, Plaintiff asserts the ALJ erred by relying upon the opinions of the non-examining physicians to determine whether Plaintiff is disabled.

*Dr. Bendinger's Opinion*

On December 10, 2014, Dr. Bendinger, Plaintiff's treating physician, completed a Medical Source Statement ("MSS") in which he opined that Plaintiff could lift five pounds occasionally, one pound frequently, and could sit, stand, and/or walk for one hour during an eight-hour workday. Tr. 578. He also opined that Plaintiff would require at least a one-hour break in addition to a morning, lunch, and afternoon break. Tr. 578. He concluded that Plaintiff could rarely push and pull, climb and balance, bend and stoop, or reach, but could occasionally perform manipulations, such as grasping, twisting, and handling. Tr. 578. He found Plaintiff rarely able to operate a motor vehicle or work with or around hazardous machinery, and noted that she should not be exposed to dust, fumes, gases, extreme temperatures, humidity, or other pollutants because of her asthma. Tr. 578. Dr.

Bendinger opined that Plaintiff would be absent more than four days per month due to chronic back pain as a result of degenerative disc disease. Tr. 579.

The ALJ afforded Dr. Bendinger's opinion "little weight." Tr. 20. In so doing, the ALJ provided the following reasoning:

> Dr. Bendinger's opinions are largely inconsistent with the medical evidence of record as a whole. Although the claimant has been treated for the impairments to which he referred in his statement, physical examinations and laboratory findings do not support the extreme limitations that he described.

Tr. 20.

*Dr. Whitney's Opinion*

In contrast, the ALJ afforded "significant weight" to the opinions of the state-agency medical consultant, Dr. Whitney. Tr. 20. Dr. Whitney, a non-examining physician, opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; could sit, stand and/or walk for six hours in an eight-hour workday; and could push and/or pull an unlimited amount. Tr. 70. He noted that Plaintiff could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs. Tr. 70. He further noted that Plaintiff could occasionally balance, stoop, kneel, crouch, and crawl. Tr. 70. He opined that Plaintiff should avoid concentrated exposure to extreme cold and fumes, odors, dust and other irritants, and avoid all exposure to hazards. Tr. 71.

In affording the opinion of Dr. Whitney significant weight, the ALJ provided the following reasoning: "Dr. Whitney's opinion is consistent with the mild laboratory findings and the consultative examination. Evidence submitted after Dr. Whitney's review of the medical record further supports his opinions." Tr. 20.

*Whether the ALJ had Good Cause to Discount the Opinion of Dr. Bendinger*

First, the undersigned turns to whether the ALJ provided good cause to afford the opinion of Dr. Bendinger less than significant weight. Prior to engaging in this discussion, however, the undersigned notes that Plaintiff does not specifically argue that the ALJ did not have good cause to discount Dr. Bendinger's opinion, nor does she point to any particular error in the ALJ's assessment of Dr. Bendinger's opinion. Nonetheless, to the extent that such an argument is naturally inherent within Plaintiff's generalized argument that the ALJ erred by affording little weight to Dr. Bendinger and more weight to Dr. Whitney, the undersigned will address the issue.

As noted previously, an ALJ must give the opinion of a treating physician "substantial or considerable weight unless good cause is shown to the contrary." *Phillips*, 357 F.3d at 1240. "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel,* 631 F.3d at 1178–79 (quoting *Phillips,* 357 F.3d at 1240–41). Here, the ALJ discounted Dr. Bendinger's opinion and afforded it little weight because it was "largely inconsistent with the medical evidence of record as a whole," and the extreme limitations he described for Plaintiff are not supported by physical examinations and laboratory findings. Tr. 20. This justification falls within the category of good cause required to discount the opinion of a treating physician. *See Winschel*, 631 F.3d at 1178-79 (noting that good cause exists to discount a treating physician's opinion when the opinion is not bolstered by the evidence or when evidence in the record supports a contrary

finding). And, as the Eleventh Circuit has reminded courts not to second guess the ALJ's discount of a physician's opinion so long as the ALJ provides proper reasoning for such a discount, *see Hunter*, 808 F.3d at 823, the undersigned's inquiry must end with the conclusion that the ALJ provided proper justification for discounting the opinion of Dr. Bendinger, particularly considering Plaintiff has provided no specific argument as to why the discount was in error.[8] Accordingly, the undersigned finds that the ALJ articulated good cause to afford Dr. Bendinger's opinion little weight.

*Whether the ALJ Properly Afforded the Opinion of Dr. Whitney Significant Weight*

Because the undersigned concludes that the opinion of Dr. Bendinger was properly discounted by the ALJ, the ALJ could properly afford the opinion of Dr. Whitney, a non-examining physician, significant weight so long as the reports of Dr. Whitney do not contradict the objective medical evidence in the record. *See Flowers*, 441 F. App'x at 743.

In reaching his opinion, Dr. Whitney relied upon the findings of Dr. Richard Meadows, a physician who performed a consultative physical examination of Plaintiff in 2013. Tr. 65. Dr. Meadows noted that Plaintiff's lungs were clear to auscultation bilaterally, her back was tender to palpation over the lumbar-sacral spine and the sacroiliac joints. Tr. 65. He noted that Plaintiff had pain with range of motion of the left hip; that Plaintiff had full range of motion of the upper and lower extremities bilaterally, although

---

[8] Plaintiff has not argued that the ALJ was incorrect when she stated that Dr. Bendinger's opinions are largely inconsistent with the medical evidence of record as a whole, nor has she pointed the court to evidence within the record that bolsters Dr. Bendinger's opinion. Similarly, Plaintiff has not argued that the ALJ was incorrect when she stated that the physical examinations and laboratory findings do not support the extreme limitations that Dr. Bendinger described for Plaintiff, nor has she pointed the court to any medical evidence within the record to support the limitations prescribed by Dr. Bendinger. An independent review of the medical evidence and the record does not suggest otherwise.

she had some pain with rotation of both shoulders; and that Plaintiff's muscle strength was 5/5 bilaterally. Tr. 65. Dr. Meadows found Plaintiff to have decreased deep tendon reflexes bilaterally, and a positive Tinel's Sign on the right wrist. Tr. 65. He also found Plaintiff walked with a normal tandem gain, but was only able to squat forty percent due to knee pain from a recent fall. Tr. 65.

Dr. Whitney also relied upon information from the clinic of Dr. Bendinger— Abbeville Family Health. Tr. 66. He noted that, on November 7, 2012, an MRI of Plaintiff's spine showed a dessicated L5-S1 disc, but no significant spinal stenosis or compressive discopathy. Tr. 66.

When asked to explain the evidence supporting his conclusions regarding Plaintiff's postural limitations, Dr. Whitney stated, amongst other things, that Plaintiff's consult with an orthopedist found that no surgical intervention for her back was needed; that a previously performed x-ray showed some dessication in L5-S1; that an MRI showed mild foraminal stenosis; and that a primary care exam in 2013 indicated that she had a normal gait. Tr. 70.

Other than the MSS provided by Dr. Bendinger (whose opinion the ALJ discounted) Plaintiff does not point the undersigned to any evidence—objective or otherwise—within the record that conflicts with the report and opinion of Dr. Whitney. An independent review of the record by the undersigned uncovers no such inconsistencies. Further, the undersigned finds that the report of Dr. Whitney does not even conflict with the reports of Dr. Bendinger. Indeed, Dr. Whitney relied upon the objective medical evidence provided by Dr. Bendinger to reach his conclusions regarding Plaintiff's functional limitations.

Obviously, Dr. Bendinger and Dr. Whitney do disagree with how Plaintiff's conditions affect her ability to physically and mentally engage in society. However, such is the nature of physician opinions, and it is the job of the ALJ to determine which opinion, if any, is properly supported by the medical evidence of record and whether that opinion will be applied in determining a claimant's RFC. Thus, because Dr. Whitney's opinion does not conflict with the objective medical evidence of record, the undersigned finds that the ALJ did not err in affording the opinion of Dr. Whitney significant weight.

Although Plaintiff does not point to any objective medical evidence that undermines Dr. Whitney's assessment, she does argue that the ALJ's reliance upon Dr. Whitney's opinion is erroneous because of the ALJ's reasoning in affording the opinion significant weight. Particularly, Plaintiff points to the ALJ's statement that "[e]vidence submitted after Dr. Whitney's review of the medical record further supports his opinions." Tr. 20. Plaintiff cries foul, pointing to Dr. Bendinger's MSS, provided more than a year after Dr. Whitney's opinion, which she claims is "clearly inconsistent [and] contrary to the ALJ's statement that the evidence submitted after Dr. Whitney's review of the medical record further supports his opinions." Doc. 9 at 7.

Absent Dr. Bendinger's MSS, a review of the medical evidence submitted after the report of Dr. Whitney on October 25, 2013, includes Plaintiff's visit to an ear, nose, and throat physician, Dr. Paul C. Motta. Tr. 556-577. When visiting Dr. Motta on October 6, 2014, Plaintiff reported no joint pain, joint swelling, or muscle pain. Tr. 558. She also denied vertigo and lightheadedness. Tr. 558. Dr. Motta noted that she appeared "well nourished, well-developed, alert, oriented, [and] in no acute distress." Tr. 558. Similar

treatment notes from September 25, 2014, July 31, 2014, June 19, 2014, May 15, 2014, April 10, 2014, March 13, 2014, and February 13, 2014, indicate that Plaintiff appeared in no distress, and was cooperative to examination. Tr. 562-566, 571, 573.

In addition to the evidence from Plaintiff's ear, nose and throat doctor, treatment records from Dr. Bendinger's clinic—Abbeville Family Health—were submitted. These reports date from January 2014 through December 2014, and note the following:

- On January 10, 2014, Plaintiff reported to Dr. Griffith Walters, a physician in the Abbeville Family Health Practice, complaining of fatigue, nosebleeds, coughing, and congestion. She stated her pain level was 4, and appeared in no acute distress. Her lungs were clear to auscultation. She had pain with range of motion in her low back, and was assessed to have acute sinusitis, migraine headache, acute bronchitis, and polyarticular joint pain. She was given an antibiotic and steroid injection, referred to an ENT specialist, and told to follow-up within a month, or sooner, if needed. Her prescription for oxycodone-acetaminophen was renewed for thirty tablets. Tr. 580-583.

- On January 21, 2014, Plaintiff reported to Dr. Bendinger for lower back pain. Plaintiff stated that she had recently received several shots for her back, but they were not lasting. At that time, she reported a pain level of 9. Plaintiff was assessed with lower back pain, and prescribed a fentanyl patch and minocin, and her oxycodone-acetaminophen prescriptions was renewed for thirty tablets. Tr. 584-586.

- On February 3, 2014, Plaintiff reported to Dr. Bendinger for a medication refill, stating that the fentanyl patches were "working great" for her lower back pain. She reported a pain level of three. Dr. Bendinger renewed two oxycodone-acetaminophen scripts for Plaintiff, thirty tablets each, and renewed her prescription for ten fentanyl patches. Tr. 587-589.

- On February 14, 2014, Plaintiff reported to Dr. Griffith Walters for sinus issues and headaches. She reported a pain level of six, but appeared to be in no acute distress. Dr. Walters renewed Plaintiff's prescription for thirty oxycodone-acetaminophen, Cymbalta, and was given several injections. Tr. 590-593.

- On February 28, 2014, Plaintiff reported to Mark Choquette, Jr., PA for medication refills. Plaintiff reported a six on the pain scale. Plaintiff was

provided sixty tompamax, which she stated had been helping control her headaches. She also received an additional oxycodone-acetaminophen prescription for thirty tablets. Tr. 594-596.

- On March 11, 2014, Plaintiff reported to Dr. Bendinger, stating that she was under a lot of stress and was experiencing panic attacks. Dr. Bendinger renewed Plaintiff's fentanyl patch and her oxycodone-acetaminophen for thirty tablets, and prescribed klonopin for anxiety. Tr. 597-599.

- On March 17, 2014, Plaintiff reported to Dr. Bendinger for medication refills. She stated that she had sinus drainage, but that her chronic back pain was "doing ok." She reported her pain level as two. Amongst other medications prescribed for her sinus issues, Dr. Bendinger renewed her oxycodone-acetaminophen prescription for thirty tablets. Tr. 600-602.

- On March 25, 2014, Plaintiff reported to Mr. Choquette for medication refills. She reported her pain to be level six. Plaintiff's fentanyl patch was renewed, along with her topamax and thirty tablets of oxycodone-acetaminophen. Tr. 604-605.

- On April 11, 2014, Plaintiff reported to Dr. Walters for hip and elbow pain. She reported her pain level as a ten. Plaintiff was given several injections, and a script for thirty oxycodone-acetaminophen was renewed. Tr. 607-609.

- On April 24, 2014, Plaintiff returned to Dr. Bendinger for a medication refill. She reported her pain level as a four, and noted that the latest weather change required her to take more of her oxycodone-acetaminophen. Treatment notes indicate that Plaintiff was informed that she was too early for a refill on her pain medication. Dr. Bendinger renewed her fentanyl patch and prescribed sixty oxycodone-acetaminophen. Tr. 613-615.

- On May 22, 2014, Plaintiff reported to Dr. Bendinger for medication refills. Plaintiff was prescribed more fentanyl patches and sixty oxycodone-acetaminophen. Tr. 616-617.

- On June 19, 2014, Plaintiff returned to Dr. Bendinger for medication refills. Dr. Bendinger noted that Plaintiff's chronic back pain and lumbar pain were "controlled with current medications." Plaintiff reported her pain level as a six. Dr. Bendinger renewed her fentanyl patch and renewed a prescription for sixty oxycodone-acetaminophen. Tr. 619-621.

- On July 10, 2014, Plaintiff returned to Dr. Bendinger, reporting bilateral knee pain and lumbar pain, and requested medication refills. She reported her pain to be a six. Dr. Bendinger referred Plaintiff to an orthopedic surgeon. He also renewed her oxycodone-acetaminophen prescription for sixty pills, along with her fentanyl patch. It appears that Dr. Rose Redmond, presumably a doctor in the Abbeville Family Practice, also renewed Plaintiff's oxycodone-acetaminophen prescription for sixty tablets and her fentanyl patch during that visit. Tr. 622-624.

- On July 31, 2014, Plaintiff reported to Dr. Bendinger for medication refills. Plaintiff reported her pain level as a five. Dr. Bendinger renewed Plaintiff's oxycodone-acetaminophen prescription for sixty pills. Tr. 626-628.

- On August 26, 2014, Plaintiff reported to Dr. Bendinger complaining of neck pain, weakness, body shakes, discoloration in toes, swelling, and medication refills. She rated her pain as a five. Dr. Bendinger renewed Plaintiff's fentanyl patch and her oxycodone-acetaminophen for sixty pills, and a consultation with a neurologist was ordered. Tr. 629-631.

- On September 10, 2014, Plaintiff returned to Dr. Bendinger and reported back pain. She reported her pain level as a four. Dr. Bendinger refilled her oxycodone-acetaminophen for thirty tablets, and prescribed sixty tablets of adderall. Tr. 632-634.

- On October 1, 2014, Plaintiff returned to Dr. Bendinger. The medical notes indicate that her pain was a zero. Dr. Bendinger renewed her oxycodone-acetaminophen for sixty pills, renewed her fentanyl patch, and renewed Plaintiff's tramadol. Tr. 635-638.

- On October 30, 2014, Plaintiff returned for medication refills. Treatment notes indicate that Plaintiff's pain medications are "working OK" for her lumbar disc disease and chronic back pain, and that she has seen another physician who has not recommended surgery "for now." Dr. Bendinger renewed a prescription for sixty oxycodone-acetaminophen and Plaintiff's fentanyl patch. Tr. 639-641.

- On November 10, 2014, Plaintiff returned to Dr. Bendinger complaining of low back pain. She reported her pain to be a ten. An examination of Plaintiff's lumbar spine states that there were abnormalities of the lumbar/lumbosacral spine, palpation of the lumbosacral spine, muscle spasms, and pain elicited by motion and flexion and extension. Plaintiff was given several injections. Tr. 642-644.

- On November 19, 2014, Plaintiff returned to Dr. Bendinger complaining of lower back pain and needing medication refills. Dr. Bendinger's treatment notes indicate Plaintiff is "doing OK on current medications." Plaintiff reported a ten on the pain scale. She was given injections, had a prescription for sixty oxycodone-acetaminophen tablets renewed, and a prescription for a fentanyl patch renewed. Tr. 645-647.

- On December 10, 2014, Plaintiff reported to Dr. Bendinger for medication refills and a cough. She reported her pain as a five. Dr. Bendinger noted that Plaintiff had lumbar pain and tenderness, and that she needed a back brace. Dr. Bendinger renewed Plaintiff's oxycodone-acetaminophen prescription for sixty tablets, and her prescription for fentanyl patches. Tr. 648-650.

In addition to the visits with Dr. Bendinger and the physicians in his practice, a medical report from Dr. Maddox to Dr. Bendinger, dated October 29, 2014, appears in Plaintiff's medical evidence. That report provides the following:

Plaintiff has done extremely well with her exercise program. . . . She benefits from the DDS back brace. She has continued to lose weight and has improved. The injections . . . helped a lot. She is neurologically intact. She heel and toe stood well, raised from a partial squat. Negative SLR. No focal or trigger point tenderness. I thought she had functional ROM without objective spasm.

She is on an excellent course. I don't have anything else to suggest now except to encourage her to continue her program. Hopefully over time she will get to what she considers to be her ideal weight and conditioning which I think is the best investment she can make in her back. . . .

We did review her MRI. She has degenerative disc disease at L4-5 with a moderate disc protrusion, more advanced degenerative disc at L5-S1 with a less prominent protrusion. She has no area of severe spinal stenosis, some left sided discogenic crowding paracentrally at L4-5 and some bilateral foraminal crowding at L5-S1 again a little worse on the left.

Tr. 664.

It is unclear whether the ALJ relied upon any of the above medical evidence to support her conclusion that Dr. Whitney's opinion of Plaintiff's functional ability was

bolstered by subsequent medical opinions. However, it does not appear that the ALJ's reliance upon any of the above medical evidence would have been misplaced, or that the evidence contradicts the conclusions of Dr. Whitney, either subjectively or objectively. Plaintiff has not argued that her symptoms have worsened since the time of Dr. Whitney's report, and it appears that her back pain has been well-controlled—according to Dr. Bendinger's own notes subsequent to Dr. Whitney's opinion—with the medications he prescribed. Further, Dr. Maddox's letter summarizes the objective medical findings for Plaintiff's back in 2014, which he described as moderate and non-severe. In conjunction with these objective findings, Dr. Maddox opined that Plaintiff "has improved" through exercise and weight loss and is "on an excellent course." Thus, the undersigned finds no reason to conclude that the ALJ's reasoning for affording Dr. Whitney's opinion substantial weight—i.e., that the opinion was bolstered by subsequent evidence—was erroneous.[9] Plaintiff's argument is unpersuasive.

*Summary of the ALJ's Treatment of Dr. Bendinger and Dr. Whitney*

In summary, the ALJ provided proper reasoning for discounting the opinion of Plaintiff's treating physician, Dr. Bendinger. Because she properly discounted the opinion of Dr. Bendinger, it was proper for the ALJ to afford Dr. Whitney's opinion significant weight, even though Dr. Whitney was a non-examining physician, as Dr. Whitney's opinion and report did not conflict with the objective evidence in the record. Accordingly,

_____

[9] To be sure, Dr. Bendinger's MSS, submitted a year after Dr. Whitney's assessment, does conflict with Dr. Whitney's conclusions as to Plaintiff's functional capacities. However, as noted above, the ALJ discounted the opinion of Dr. Bendinger, and provided good cause for doing so. It makes logical sense that if the ALJ properly discounted the opinion of a treating physician, the opinion of such a treating physician is likely to conflict with the opinions of other medical sources.

the ALJ did not err when affording the opinion of Dr. Bendinger "little weight," and the opinion of Dr. Whitney "significant weight."

*Dr. Richard Ghostley and Dr. Arnold Mindingall*

Similarly, Plaintiff challenges the ALJ's treatment of the opinions of Dr. Richard Ghostley, a consultative psychiatrist, and Dr. Arnold Mindigall, the state-agency non-examining physician. Other than regurgitating the paragraphs in which the ALJ assigned little and significant weights to Dr. Ghostley and Dr. Mindingall, respectively, Plaintiff does not provide the court with any argument as to how the ALJ erred. Presumably, then, Plaintiff simply argues that the ALJ should not have assigned "little weight" to the examining physician and "significant weight" to the non-examining physician. To the extent that such is Plaintiff's argument, the undersigned will examine it with the same analysis performed above regarding Dr. Bendinger and Dr. Whitney.

*Dr. Ghostley's Opinion*

Dr. Ghostley performed a consultative psychological examination of Plaintiff in 2013. Tr. 509-511. Dr. Ghostley noted that Plaintiff's affect was predominately normal, although there was some distress when she recounted her previous employment. Tr. 510. He concluded that Plaintiff was fully oriented and had adequate attention for conversational purposes. Tr. 510. While he found Plaintiff to have some difficulty with concentration and memory, she had unimpaired insight and judgment. Tr. 510-11. Dr. Ghostley opined that Plaintiff's ability to function independently was unimpaired, but her ability to understand, remember, and carry out simple instructions was markedly impaired at that time by

depression. Tr. 511. He also opined that her ability to respond to supervisors, coworkers, and work pressures in a work setting was also markedly impaired. Tr. 511.

In affording Dr. Ghostley's opinion little weight, the ALJ provided the following reasoning:

> The undersigned gives little weight to Dr. Ghostley's opinion regarding the claimant's difficulty in following simple instructions. Although she had difficulty with some tests during the evaluation, her activities of daily living suggest that she could handle simple, if not complex and detailed, instructions. The undersigned gives little weight to Dr. Ghostley's opinion regarding the claimant's limitation with regard to responding appropriately to supervisors, coworkers, and workplace pressures, as it is not supported by his evaluation or elsewhere in the medical evidence of record. Dr. Ghostley said she was alert and attentive, made good eye contact, exhibited normal speech, and had unimpaired judgment with regard to social functioning and family relationships[.] The residual functional capacity accommodates any limitations in concentration, persistence, and pace, by limiting the claimant to simple, routine, repetitive tasks.

Tr. 19.

*Dr. Mindingall's Opinion*

In contrast, Dr. Mindingall, who performed a consultative examination of Plaintiff in September 2013, opined that Plaintiff has the mental residual functional capacity to understand, remember, and carry out simple instructions; to sustain attention to simple tasks for two hours; and to respond to at least simple and infrequent changes in work routine. Tr. 67. He further opined that Plaintiff would need help with planning and goal-setting. Tr. 67.

The ALJ afforded Dr. Mindingall's opinion significant weight, noting the following:

> Significant weight is given to the opinions of the State agency psychological consultant Arnold Mindingall[.] Dr. Mindingall's opinion generally is consistent with the conservative treatment for claimant's symptoms of

depression and anxiety, and with the results of Dr. Ghostley's psychological examination, although the undersigned notes that there is no evidence to support the adaption [sic] limitations. His opinions regarding her ability to handle simple instructions and simple tasks are reflected in the restriction to simple, routine, repetitive tasks.

Tr. 21.

*Whether the ALJ Properly Considered the Opinion of Dr. Ghostley*

First, the ALJ notes that Dr. Ghostley is not Plaintiff's treating physician, but is instead a consultative examining physician. Thus, the ALJ was not required to provide good cause for discounting the opinion, as she would be required to do for a treating physician. Nonetheless, the ALJ provided specific reasoning as to why she afforded Dr. Ghostley's opinion little weight. Indeed, the ALJ reasoned that Plaintiff's daily living activities, the general lack of evidence supporting Dr. Ghostley's conclusions, and the seemingly conflicting treatment notes of Dr. Ghostley rendered the opinion of little value. Tr. 19. Considering Plaintiff's lack of specific argument as to why the ALJ's reasoning for affording the opinion little weight was in error, the undersigned will not second guess the ALJ's treatment of the opinion as the ALJ has articulated specific justification for the assignment of little weight.

*Whether the ALJ Properly Afforded the Opinion of Dr. Mindingall Significant Weight*

Here, in reasoning that Dr. Mindingall's opinion should be afforded significant weight, the ALJ specifically stated that Dr. Mindingall's opinion was consistent with the conservative treatment provided by Plaintiff's treating physicians, and with Dr. Ghostley's own examination of Plaintiff. Plaintiff has not challenged any error in these statements, or

pointed the undersigned to evidence in the record to the contrary. An independent review of the medical evidence by the undersigned does not indicate that Dr. Mindingall's report conflicts with the objective medical evidence in the record, or the records of Plaintiff's treating physicians. Accordingly, the undersigned concludes that ALJ properly afforded the opinion of Dr. Mindingall significant weight.

*Whether the ALJ was Required to Further Develop the Record*

Finally, before turning to Plaintiff's second argument, the undersigned will address Plaintiff's assertion that the ALJ was required, after rejecting the opinions of Plaintiff's examining physicians, to further develop the record instead of relying upon the opinions of the non-examining physicians. Doc. 9 at 8-9. Plaintiff's assertion is incorrect. The need to recontact a treating doctor arises when the basis for the treating physician's opinion is "not clear." Where an ALJ finds not that the basis of the opinion is "unclear," but instead that the opinion is not supported by the record, there is "no need for the ALJ to recontact [the treating physician]." *Coleman v. Colvin,* Civ. Act. No. CV-12-S-2732-E, 2013 WL 3150465, at *3 (N.D. Ala. June 18, 2013).

Here, the opinions of Dr. Bendinger and Dr. Ghostley were not bolstered by the objective medical evidence of record, and the ALJ specifically stated that conclusion. She did not find that the opinions of the examining physicians were "unclear." Accordingly, the ALJ did not err in failing to recontact either physician to further develop the record.

**B. Whether substantial evidence supports the ALJ's assessment of Plaintiff's RFC.**

Plaintiff argues the ALJ erred in stating her RFC because the ALJ "failed to take into account [Plaintiff's] chronic fatigue and side effects of her medication." Doc. 9 at 9. Specifically, Plaintiff points to her testimony at the hearing before the ALJ, where she noted that her medicines make her "real, real foggy" and cause her stomach to be "messed up most of the time." *Id*. She further points to the MSS provided by Dr. Bendinger which states that Plaintiff would need to rest for an hour beyond normal work breaks, and that she would likely miss more than four days a month due to her back pain. *Id*. at 10. Because the ALJ failed to take these limitations into consideration, Plaintiff argues, the ALJ erred.

In determining whether a claimant's impairments limit her ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). Under certain circumstances, an ALJ's duty to develop a full record can include investigating the side effects of medications. *Compare Cowart v. Schweiker,* 662 F.2d 731, 737 (11th Cir. 1981) (concluding that ALJ failed to fully develop the record where *pro se* claimant testified that she took eight different prescription medications and was "kind of zonked most of the time" and the ALJ failed to either elicit testimony or make findings regarding the effect of medications on her ability to work), *with Cherry v. Heckler,* 760 F.2d 1186, 1191 n. 7 (11th Cir. 1985) (concluding the Secretary, upon reopening, did not have a duty to further investigate side effects of the counseled claimant's medications where the claimant did not allege side effects contributed to her disability and stated only

that her medication made her drowsy). However, the ALJ's obligation to develop the record does not relieve the claimant of the burden of proving she is disabled. *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003). Thus, the claimant must introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work. *See id.*

During the hearing before the ALJ, Plaintiff testified that her medicine "makes [her] a little forgetful." Tr. 42. She further stated that it "gets [her] off balance and [ ] makes [her] very tired[.]" Tr. 43. Later, Plaintiff was specifically questioned by her attorney regarding the side effects of her medication. Tr. 49-50. Plaintiff responded that the "medicines make [her] real, real foggy. It's like sometimes I can't put sentences together . . . . It's like I'm missing pieces of the words or something." Tr. 50. She further stated that the medicines she takes cause her stomach to be upset, and can cause headaches. Tr. 50. It does not appear that Plaintiff introduced evidence that the side effects of her medication made her unable to work, either through testimony at the hearing, or otherwise.

In making Plaintiff's RFC determination, the ALJ acknowledged that Plaintiff "took numerous medications, which caused grogginess, an inability to focus, and nausea." Tr. 17. He also noted that "[a]lthough she takes many medications, there is no indication from the record that her medications preclude work. In fact, she reported to her doctors that the medications helped and she was doing better on them[.]" Tr. 20. Based upon these observations, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC. Tr. 18. According to the Eleventh Circuit, a reference to a

claimant's side effects and medications, accompanied by a finding that the evidence was considered and that the limitations were not credible to the extent they were inconsistent with the RFC, is sufficient to show that the ALJ considered a claimant's medications in determining her RFC. *Lipscomb v. Comm'r of Soc. Sec.*, 199 F. App'x 903, 906 (11th Cir. 2006) (noting that it is unnecessary for the ALJ to discuss specifically refer to every piece of evidence in his decision).

Further, apart from her own statements at the hearing, the undersigned finds little evidence in the record that Plaintiff complained to her physicians concerning medication side effects, and Plaintiff does not point the court to any such evidence.[10] Thus, the undersigned concludes that the ALJ considered Plaintiff's medications and their side effects when making her RFC determination, and properly discounted Plaintiff's accounts of the effects of those medications on her ability to work.[11] And, because the ALJ properly discounted the opinion of Dr. Bendinger, she was not required to include his limitations— i.e., that Plaintiff would require an extra hour break during the workday and that she would miss more than four days per month due to back pain—in considering the Plaintiff's RFC. *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical

---

[10] Although Plaintiff does not point the undersigned to any evidence, an independent review of the record uncovers a letter from Dr. Michael Labanowski, a physician at Southern Sleep Clinics, to Plaintiff's treating physician, Dr. Bendinger. Tr. 657. The letter, dated September 5, 2014, indicates that Plaintiff was "experiencing increasing daytime sleepiness" and the medication prescribed for her restless legs made that worse. Tr. 657. Thus, she discontinued the medication. Tr. 657. The letter further indicates that, in the past, she was prescribed a medication to combat her daytime sleepiness, but that the medication "does not seem to be effective any longer and she has even quit driving" due to her sleepiness. Tr. 657. Importantly, however, Plaintiff does not argue, nor does the letter indicate, that Plaintiff is unable to work due to the effects of her medication.

[11] Plaintiff does not challenge the ALJ's credibility finding.

question which comprises all of the claimant's impairments."). Accordingly, the ALJ did not err by failing to further develop the record as to the side effects of Plaintiff's medications, and substantial evidence supports her RFC determination.

## VI.    CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 23rd day of October, 2017.


/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE